OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
The petition sets up two claims. The first is for $27,700, for the rent from December 15,1868, to the date of the filing of the petition, July 8,1880, at $200 per month, of part of a building in Sitka, claimed to have been leased by the claimants to. Hiram Ketchum, jr., collector of customs at Sitka, by the written lease set forth in the findings of facts.
Of course, the first question to be considered is whether Ketchum had lawful authority to bind the United States by that lease.
By section 21 of the Act of March 2, 1799, “to regulate the collection of duties on imports and tonnage ” (1 Stat. L., 642, ch. 22), a collector of customs was authorized, “with the approbation of the principal officer of the Treasury Department, to provide, at the public expense, storehouses for the safe-keeping of goods, *512 and sucb scales, weights, and measures as may be necessary”; and this law was in force when this lease was executed.
It is found as a fact that Ketchum had no authority from the Secretary of the Treasury to rent any storehouse in Sitka. Not only so, but it is also found that the Secretary, on receiving from Ketchum a copy of the lease, promptly disapproved it, and claimed that the leased property belonged to the United States under the provisions of the treaty of cession of Alaska.
No more need be said to show that the pretended lease had, and could have, no legal validity as against the United States.
The second claim is for $38,880 for the use and occupation of the remainder of the building in question, begun by General Davis’s talcing possession of part of it in June, and the remainder in September, 1869, which possession was continued by the United States till the institution of this suit. This claim appears to us to have no better foundation than the other.
In Langford v. The United States (101 U. S. R., 341) the Supreme Court enunciated doctrines which seem to us directly applicable to this case. From their opinion we present the following passages:
The findings of the court leave no doubt that tbe Indian agents acting for tbe United States, and -without the consent of tbe American Board of Commissioners for Foreign Missions, took possession of tbe buildings which that board bad erected upon tbe lands, and have since retained them by force, and against its will or that of Langford, who claims title under it. Tbe United States always asserted that their possession was by virtue of their own title, which was hostile to that of the claimant. The military of the United States was at one time ordered to protect by force the occupation of the agents.
Conceding that the title, or even the right of possession of the premises, was in the claimant, it would seem that the facts above stated show that the act of tbe United States in taking and holding that possession was an unequivocal tort, if the Government can be capable of committing one, and that if the case were between individuals every implication of a contract would be repelled.
We are not prepared to deny that when tbe Government of tbe United States, by such formal proceedings as are necessary to bind it, takes for public use, as for an arsenal, custom-house, or fort, land to which it asserts no claim of title, but admits the ownership to be private or individual, there arises an implied obligation to pay the owner its just value.
It is to be regretted that Congress has made no provision by any general law for ascertaining and jjaying this just compensation. And we are not called on to decide that when the Government, acting by tbe forms which *513 are sufficient to 'bind it, recognizes the fact that it is taking private property for public use, the compensation may not he recovered in the Court of Claims. On this point we decide nothing.
What is pertinent to the present case is that, conceding that principle, it does not confer on that court the authority to decide that the United States, in asserting the right to use its own property, is using that of an individual, and in taking possession of such property under claim of title, and retaining it ky force against an opposing claimant, has come under an implied contract to pay him for the use of the property. In the first case, the Government admits the title of the individual and his right to compensation. The right to compensation follows from the two propositions, that it was private property and was taken for public use, neither of which is disputed.
It is a very different matter where the Government claims that it is dealing with its own, and recognizes no title superior to its own. In such case the Government, or the officers who seize such property, are guilty of a tort, if it he in fact private property. No implied contract to pay can arise any more than in the case of such a-transaction between individuals. It is conceded that no contract for use and occupation would, in that case, be implied.
The views thus expressed by the court of last resort seem to us to leave no ground for the second claim to -rest upon; for there is no doubt that the Government took possession of the building in question claiming title to it under the treaty of cession. The claimants insist that, in fact, it was their property; thus setting up an adverse and better title as against that of the United 'States. This raises an issue which, under the ruling of the Supreme Court, cannot be tried by this court-, for want of jurisdiction. ‘ ■
But there seems to us to be. another provision of law denying that jurisdiction to us.
Assuming the deed executed by Prince Maskoutoff, and set forth in the findings, to have been authorized by the Russian-American Company, the question whether it passed any title, and, if any, what, would depend on the terms of the treaty of cession, and what was done thereunder. If by the treaty the building in question was to be regarded as public property., it passed to the United States ;s if private property, it did not so pass. And if it belonged to that company before the cession, the question then would be whether by the stipulations of the treaty, the title to it was to remain in the company after the cession, or was to be vested in the United States. The title which is' asserted under that deed would therefore depend on those stipulations, as would likewise the claim *514 based on that title. It is quite certain that this court has no power to render a judgment against the United States on any claim depending on a treaty, for it is expressly denied in section 1066 of the Revised Statutes, declaring that the jurisdiction of this court “shall not extend to any claim against the Government * * * dependent on any treaty stipulations entered into with foreign nations.’7
But even if we had jurisdiction, the claimants do not show title in themselves; for whatever right the Russian-American Company may have had after the cession was conveyed to Louis Sloss by the deed given in evidence by the claimants and set forth in the findings, if that deed was the authorized act of that company. Thus the claimants, by their own evidence, prove that if there is a right of action in any one on account of the seizure, occupation, and use of the building, it is not in them, but in Sloss, who is not a party to this suit.
The claimants requested the court to find a number of facts in relation to the powers, rights, privileges, property, and acts of the Russian-American Company, and the acts and proceedings of the commissioners appointed by Russia and the United States to give and receive the possession of Alaska; all of which we have omitted to find, because they relate only to the question of title to the building in dispute, which cannot be tried here.
The judgment of the court is that the claimants’ petition be dismissed for want of jurisdiction.