Joseph E. and Leona M. ANDERSON,
et al., and Gordon Fuller
Bailey, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 33–84L, 177–84L.

United States Claims Court.

Jan. 25, 1985.

As Amended May 31, 1985.

Richard L. Huxtable, Los Angeles, Cal., for plaintiffs, David G. Eisenstein, Tucson, Ariz., O'Neill & Huxtable, Los Angeles, Cal., of counsel.

Patricia N. Young, Washington, D.C., with whom was Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C., for defendant. Steven Barringer, Branch of Water and Power, Division of Energy and Resources, Dept. of the Interior, Washington, D.C., of counsel.

NETTESHEIM, Judge.

## ORDER

This matter is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant asserted multiple grounds in its motion which is denominated properly as one for summary judgment because, with respect to several of the grounds that are asserted, the parties submitted material outside of the complaint. On the other hand, certain of the grounds do not require more than reference to the complaint, and in that sense the motion also properly is one to dismiss. Overall, except as otherwise noted, the court has applied the criteria for ruling on a motion for summary judgment.

The Federal Circuit, through Chief Judge Markey, has cautioned that "[t]he fact intensive nature of just compensation juris-

prudence ... argues against precipitous grants of summary judgment...." *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983). *Skaw v. United States,* 740 F.2d 932, 937 (Fed.Cir.1984), makes clear that the party moving for summary judgment has the burden of proving in the first instance that no genuine issue of material fact exists. This view was recently confirmed in *Orchards v. United States,* 749 F.2d 1571, 1573, 1575–76 (Fed.Cir.1984). Only when the moving party has established that no genuine issue of material fact exists, does the burden shift to the non-moving party to show that an issue of material fact does exist. *Id.* at 1575–76. Moreover, plaintiffs, as the opponents of summary judgment, must receive the benefit of all applicable presumptions, inferences, and intendments. *Id.* at 1573.

## FACTS

Plaintiffs are 36 lessees of real property adjacent to the Rio Hardy River in the Republic of Mexico who complain in two identical complaints that their property has been taken by the United States' operation of dams on the Colorado River in the United States. According to the complaints, in 1979 the Department of the Interior discharged substantial quantities of water in excess of those permitted by the Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, United States—Mexico, Feb. 3, 1944, 59 Stat. 1219, T.S. 994 [hereinafter cited as "the Treaty"], as well as Army Corps of Engineers flood control regulations.[1] This action was allegedly taken without advance notification to plaintiffs or the concurrence of the Mexican government, contrary to provisions of the Treaty. As a result plaintiffs' property was inundated.

1. Plaintiffs' complaints and opposition to defendant's motion are silent as to which regula-       tions.

## DISCUSSION

Each of defendant's arguments will be considered in the order presented:

### 1. *Cause of action based upon treaty with foreign nation*

■ 28 U.S.C. § 1502 (1982), prohibits this court from taking "jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." By their complaints plaintiffs seek to prove violation of provisions of the Treaty. Specifically, paragraphs 4, 10, 12, 13, and 14 charge a taking due to the release of substantially more water than authorized by the Treaty without advance notification to plaintiffs or the concurrence of Mexico. Jurisdiction is lacking over plaintiffs' claims insofar as the rights asserted derive from a treaty, *e.g., Kinkead v. United States*, 18 Ct.Cl. 504 (1883), but this court has jurisdiction of plaintiffs' claims insofar as they allege a taking by inundation apart from the Treaty, because their claims can conceivably exist independently of, or separate and apart from, the Treaty. *See Hughes Aircraft Co. v. United States*, 209 Cl.Ct. 446, 467–73, 534 F.2d 889, 902–06 (1976).

The most liberal reading of plaintiffs' complaints, as clarified by their opposition to defendant's motion, is that they will base a taking on the inundation of their lands due to acts of defendant in operating the subject dams for the public benefit. This formulation of plaintiffs' claims precludes granting defendant's motion to dismiss on the ground that their claims should be construed as inextricably bound to the Treaty. *See Bettini v. United States*, 4 Cl.Ct. 755, 757 (1984) (order denying motion to dismiss).

### 2. *Litigation of plaintiffs' claims in the Claims Court precluded by treaty*

■ Article 20 of the Treaty provides in pertinent part:

> Each Government shall assume responsibility for and shall adjust exclusively in accordance with its own laws all claims arising within its territory in connection with the construction, operation or maintenance of the whole or of any part of the works herein agreed upon, or of any works which may, in the execution of this Treaty, be agreed upon in the future.

59 Stat. 1252. Although plaintiffs' complaint, as construed by this court, may state a cause of action apart from the Treaty, article 20 provides that all claims arising in Mexico in connection with the operation of the dams involved in this litigation must be adjudicated according to the laws of Mexico. Assuming that plaintiffs are all United States nationals, which is not clear, before they can pursue a claim in this court for a taking, they are required to demonstrate that there is no alternative forum; or that the forum is inadequate; or, having pursued their remedy in the forum stipulated, that the relief afforded was inadequate. *See E-Systems, Inc. v. United States*, 2 Cl.Ct. 271, 278–84 (1983). *But see Shanghai Power Co. v. United States*, 4 Cl.Ct. 237 (1983), *appeal argued*, No. 84–860 (Fed.Cir. Oct. 1, 1984). However, because there is no evidence as to whether a forum exists or has been established by Mexico, the record at present is insufficient under Rule 56(c) to suspend these actions while plaintiffs pursue their remedies under the laws of Mexico.[2]

### 3. *Claims barred pursuant to the doctrine of res judicata*

■ Article 17 of the Treaty provides in pertinent part:

> The use of the channels of the international rivers for the discharge of flood or

---

2. The argument in *Shanghai Power Co.* that settlement of a claim does not constitute a fifth amendment taking has not been made. No cases are cited for the proposition that merely remitting a claimant to the laws of another nation constitutes settlement of a claim.

other excess waters shall be free and not subject to limitation by either country, and neither country shall have any claim against the other in respect of any damage caused by such use. Each Government agrees to furnish the other Government, as far in advance as practicable, any information it may have in regard to such extraordinary discharges of water from reservoirs and flood flows on its own territory as may produce floods on the territory of the other.

59 Stat. 1250. On October 7, 1983, the district court entered a memorandum decision ruling, *inter alia*, that "the Treaty does not create an actionable right for individual property owners such as the plaintiffs...." based on article 17.[3] An order was entered on October 12, 1983, granting in part defendant's motion for summary judgment. However, whether or not through inadvertence, the portion of the complaint referencing Treaty obligations was not the subject of the partial grant of summary judgment. No order has been entered pursuant to Fed.R.Civ.P. 54(b) providing that the judgment is final, in any event. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The doctrines of res judicata and its principal component collateral estoppel are inapplicable at this juncture. *See Jarboe-Lackey Feedlots, Inc. v. United States*, 7 Cl.Ct. 329, 335-36 (1985).

Defendant charges, Def's Br. filed Nov. 8, 1984, at 15, that plaintiffs have abandoned their California litigation in order to proceed in this court. It would appear, however, that defendant is not prevented from moving for a partial final judgment under Rule 54(b) consistent with the district court's memorandum decision. Although plaintiffs' theory of relief as clari-

fied in their opposition does not depend on the Treaty, defendant is correct that the court cannot exercise jurisdiction over those aspects of plaintiffs' claims which arise from or are dependent upon the Treaty. Evidence relating to standards or duties under the Treaty would be inadmissible to prove liability. Therefore, defendant may well decide not to perfect its collateral estoppel argument.

### 4. *Split claims*

Defendant has argued that eight of the plaintiffs in No. 33-84L could have brought their claims in the district court under that court's concurrent jurisdiction of claims cognizable under 28 U.S.C. § 1491(a)(1) (1982), for amounts no greater than $10,000 pursuant to 28 U.S.C. § 1346(a)(2) (1982). Defendant argues that plaintiffs' failure to raise their claims for an alleged taking in the district court action precludes their raising those claims here. Plaintiffs have not responded to this argument, except to urge that a claim for a taking differs from those asserted in the California litigation. This response does not fairly meet defendant's motion. In fact, plaintiffs apparently concede the point by asserting that the Claims Court has concurrent jurisdiction of claims for less than $10,000. Plf's Br. filed Oct. 2, 1984, at 19.

Accordingly, the claims of these plaintiffs will be dismissed based on the reasons and authorities cited by defendant at pp. 28-29 of its brief filed on July 3, 1984.

### 5. *Lack of authority to take plaintiffs' property by eminent domain*

Indisputably, the subject property lies within the jurisdiction of the Republic of Mexico. Defendant recognizes those cases

---

**3.** The Court of Claims indirectly construed article 17 in *Falcon Dam Constructors v. United States*, 136 Ct.Cl. 358, 142 F.Supp. 902 (1956), by not ruling that the private entity plaintiff lacked a private right of action; rather, the court held that article 20 made each country responsible

for its own contracts entered into under the Treaty and that even if the Mexican government sued on the contractual provision of the Treaty, 28 U.S.C. § 1502 would preclude jurisdiction of its claim. 136 Ct.Cl. at 364-65, 142 F.Supp. at 906.

in which the United States has been deemed to have taken property requiring the payment of just compensation when the property was located in a foreign territory. Defendant notes, however, "[I]n each case where courts have found a compensable taking in a foreign territory, the United States was in a position to exercise some measure of influence or jurisdiction over the territory where the property was located. In this instant case the United States had no such appropriate control or jurisdiction over property or persons in Mexico." Def's Br. filed July 3, 1984, at 31. Although defendant's analysis of the case law is painstaking, it underscores that the issue requires more factual inquiry than that afforded by examining other cases decided on their facts. Defendant's motion will be denied without prejudice as to this ground.

■ Defendant argues that the United States operated the dams in the furtherance of its duties under the Treaty and that the court cannot examine the sovereign's conduct of foreign relations. The point is valid, *see Shanghai Power Co.*, 4 Cl.Ct. at 247–48, but defendant's support for this factual proposition consists only of letters from agency counsel, which, however well reasoned, are not substitutes for an affidavit or other evidentiary material.

### 6. *Cause of action sounding in tort*

Based on the formulation of their claims set forth in plaintiffs' opposition, the complaints no longer sound in tort. Plaintiffs seek in this court to prove that in the operation of the dam and related water control projects on the Colorado River, defendant performed acts for the public bene-

fit the natural consequence of which was to take their property. Such a claim is a classic taking formulation. *E.g., Columbia Basin Orchards v. United States*, 132 Ct.Cl. at 450; *see Sanguinetti v. United States*, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924).[4]

Defendant has asked the court to read two decisions by the Office of the Solicitor, Department of the Interior, issued on October 20, 1981, and August 4, 1982, respectively, for the factual background of the case. The decisions reveal that defendant's probable litigation position will be that the release of water was intended to minimize flooding that would have occurred but for the anticipatory release of water that resulted in inundation of plaintiffs' land. Defendant apparently takes the position that prior to the construction of the dams involved the Colorado River frequently overflowed its banks, and it was only through flood-control projects, including anticipatory releases when unprecedented rainfall swelled reservoirs, that the flooding could be minimized. Defendant nonetheless has not moved for summary judgment on the ground that no taking can be premised on property loss caused by the operation of projects which benefit plaintiffs by reducing the amount of inundation that would have occurred anyway in the absence of the projects. *See United States v. Sponenbarger*, 308 U.S. 256, 265, 60 S.Ct. 225, 228, 84 L.Ed. 230 (1939);[5] *City of Van Buren, Arkansas v. United States*, 697 F.2d 1058, 1061 (Fed.Cir.1983). The record without affidavits or other evidentiary material does not permit a decision based on this argument.

---

**4.** Plaintiffs' affidavit puts in issue the permanence and recurrence of flooding.

**5.** The Supreme Court remarked in this seminal case:

> An undertaking by the Government to reduce the menace from flood damages which were inevitable but for the Government's work does not constitute the Government a taker of all lands not fully and wholly protected. When undertaking to safeguard a large

area from existing flood hazards, the Government does not owe compensation under the Fifth Amendment to every landowner which it fails to or cannot protect. In the very nature of things the degree of flood protection to be afforded must vary. And it is obviously more difficult to protect lands located where natural overflows or spillways have produced natural floodways.

308 U.S. at 265, 60 S.Ct. at 228.

Defendant hints that plaintiffs have wasted the court's and defendant's time in the California case. So that the administration of justice and the parties' resources are not employed to resolve claims that plaintiffs cannot hope to win, defendant shall advise plaintiffs' counsel informally of its proffer with respect to relative benefits. If plaintiffs' counsel advise defendant that they believe the Government's showing fairly can be contested, defendant shall file its renewed motion. If plaintiffs' counsel now know, or learn upon review of defendant's proffer, that plaintiffs' land was better off with defendant's dams in place and with anticipatory releases causing inundation to avert severe flooding, plaintiffs' counsel shall advise the court before February 28, 1985, that plaintiffs will take a dismissal with prejudice, preserving their right to seek review of that and the foregoing rulings of the court.

Defendant may renew its motion on this or any other grounds not herein decided.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's motion is granted in part and denied in part.

2. Pursuant to RUSCC 54(b), there being no just reason for delay, the Clerk of the Court shall dismiss the complaint in No. 33–84L as to the following claimants: John W. Guth (16), Reece T. Hand (18), D. Ralph Hanna (19), Ruth D. Helton (20), Robert Herson (22), Olaf and Maxine Pearson (29), Michael John Raynes (32), and Allen Wood (35).

3. Defendant shall renew its motion for summary judgment by February 28, 1985.