Basil N. and Enid L. **DWYER**, et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 100–85C.

United States Claims Court.

March 27, 1985.

---

Geoffrey P. Chism, Seattle, Wash., for plaintiffs.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Defendant has moved to stay this action "in accordance with 28 U.S.C. § 1500 (1982)." Plaintiffs oppose.

## FACTS

On February 20, 1985, plaintiffs filed a complaint in this court alleging several causes of action sounding in contract pursuant to 28 U.S.C. § 1491(a)(1) (1982). According to the complaint, prior to February 1982, plaintiffs became interested in purchasing the Coulee Springs Ranch (the "Ranch") from the then-owners, the Hermans. At that time title was subject to mortgages held by the previous owners, Corning & Sons, and the Farm Home Administration (the "FmHA"). The FmHA also held outstanding loans for the purchase of equipment. The Hermans were in a default posture with respect to the mortgage loans held by Corning & Sons and the FmHA.

According to the complaint, an agreement for purchase of the Ranch by plaintiffs was reached among Corning & Sons, the Hermans, and the FmHA. This agreement provided, *inter alia*, that the FmHA loan payment schedules would be revised to reflect new payment schedules agreed to by all parties. Pursuant to the agreement, plaintiffs alleged that they purchased the Ranch by a contract dated February 16, 1982. At the time of purchase, plaintiffs cured the Hermans' default by making payments to Corning & Sons and the FmHA in the amount of approximately $121,000.

The complaint further claims that although the FmHA suggested some months after the purchase that a problem might exist with plaintiffs' assumption of loan payments or with the restructuring of payment schedules for the FmHA loans and despite an agreement to notify plaintiffs before December 21, 1982, of any invalidity in the arrangements previously made, the FmHA gave no such notice at any time prior to March 1983. In the interim plaintiffs continued making payments to Corning & Sons and the FmHA in the total amount of approximately $173,000, in addition to paying on the FmHA equipment loans and infusing their capital for operation of the Ranch. Nonetheless, plaintiffs allege that by letter of March 21, 1983, the FmHA made a claim that its mortgage and equipment loans were in default. Thereafter, foreclosure proceedings were instituted, and plaintiffs lost their ownership interest in the Ranch.

Plaintiffs urge three causes of action. The first is a breach of an express contract "between plaintiffs and defendant under which plaintiffs would make certain loan payments to defendant as part of plaintiffs' purchase of the Coulee Springs Ranch...." that was breached when defendant refused to honor its terms. Compl. ¶ 13. Breach of contract is also predicated upon the FmHA's alleged failure to advise plaintiffs of any invalidity in plaintiffs' loan agreements. The second cause of action pleads an implied contract based on the same facts as the express contract, and the third pleads a contract implied in law based on a claim of unjust enrichment.[1] Plaintiffs seek $1,200,000 in damages.

---

1. This claim based on a contract implied in law is beyond the court's jurisdiction. *See Merritt v.*

■ Eight days before filing in this court, plaintiff sued in an action styled *Basil N. Dwyer, et al.*, No. C85–260 (W.D. Wash., filed Feb. 12, 1985). The two-count complaint alleging identical facts was brought under the district court's jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (1982). The first count sounds in negligence, and the second appears to plead promissory or equitable estoppel.[2]

### DISCUSSION

The question is whether 28 U.S.C. § 1500 (1982), ousts this court of jurisdiction, not whether a stay of an action coming within the jurisdiction of this court is appropriate. *See generally National Bank of Detroit v. United States*, 1 Cl.Ct. 712 (1983) (order denying motion for stay of proceedings). Jurisdiction is foreclosed by 28 U.S.C. § 1500

> of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

A comprehensive review of the decisions under this statute appears in *A.C. Seeman, Inc. v. United States*, 5 Cl.Ct. 386 (1984), suggesting that section 1500 is an anachronism, *accord* Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo.L.J. 573 (1967), but noting that the statute remains part of the United States Code and cannot be ignored. 5 Cl.Ct. at 389. Section 1500 was enacted over a century ago to avoid the maintenance of suits against the United States after a claimant had failed to receive satisfaction from su-

ing a cabinet officer. *See Schwartz, supra,* 55 Geo.L.J. at 576–77. In fact, the current purpose served by section 1500 is apparently to relieve the United States from defending the same case in two courts at the same time. *Cf. Matson Navigation Co. v. United States*, 284 U.S. 352, 355–56, 52 S.Ct. 162, 164, 76 L.Ed. 336 (1932).

In *Anderson v. United States*, 7 Cl.Ct. 341, 342–343 (1985) (order denying motion to dismiss), this judge denied a motion under 28 U.S.C. § 1500. Plaintiffs had sued on a fifth amendment taking in this court based on the construction and operation of a public improvement after they had filed an action in federal district court seeking damages based on negligence "unrelated to the construction and operation of [the] public improvement as it was intentionally designed and constructed." *Id.* at 343. Plaintiffs in *Anderson* could not pursue their taking claim in district court because of the $10,000 limitation to that court's concurrent contract and taking jurisdiction under 28 U.S.C. § 1346(a)(2) (1982). Similarly, plaintiffs in this case cannot pursue their contract claim in district court because of the amount pleaded. The principal distinction between this case and *Anderson* is that the two complaints filed in the latter case appeared to be not precisely the same factually.[3]

In *Martin v. United States*, 7 Cl.Ct. 287 (1985), another case involving a contract with the FmHA, plaintiff filed one suit with different causes of action under the Federal Tort Claims Act and 28 U.S.C. § 1346(a)(2). The total damages alleged were $21,000, not apportioned to either claim. Following the transfer of the contract claims to the United States Claims Court, the judge in *Martin* returned them to the district court because, *inter alia,* if plaintiffs' claims sounding in contract were dismissed, they could be barred from later

United States, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925).

2. Equitable estoppel is a contract theory. *See City of Alexandria v. United States*, 737 F.2d 1022, 1027–28 (Fed.Cir.1984); *cf. Biagioli v. United States*, 2 Cl.Ct. 304, 307–08 (1983) (distin-

guishing between promissory and equitable estoppel).

3. In addition, although no judgment of partial dismissal had been entered by the district court in *Anderson*, several of the factually overlapping claims had been dismissed.

litigation by the statute of limitations.[4] Proceedings were stayed, rather than dismissed, in *Arizona Helicopters, Inc. v. United States*, 4 Cl.Ct. 662 (1984), because the case filed in the Claims Court was based on a different statute affording a different type of relief than that sought in district court.

Section 1500 does not allow, by its terms, a stay to be utilized instead of barring the prosecution of a case in the Claims Court after the same claim or cause of action has been sued upon in federal district court. Senior Judge Schwartz's canvas of the law under section 1500, *Schwartz, supra*, 55 Geo.L.J. 573, and the cases discussed in *A.C. Seeman, Inc.*, 5 Cl.Ct. 389–90, reveal that the gloss put on section 1500 by the former United States Court of Claims varied over time. However, the Court of Claims consistently distinguished between a "claim" or "cause of action," on the one hand, and a theory of relief, on the other.

■ The statute employs the terms claim and cause of action synonymously. ("The ... Claims Court shall not have jurisdiction *of any claim* [in which there is pending a suit against the Government or a person] who, at the time when *the cause of action* ... arose [was acting under authority of the United States].") (Emphasis added.) The term "cause of action" was equated to "claim" in *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939) (per curiam), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940), upholding section 1500's bar when plaintiff brought a contract claim in the Court of Claims after suing unsuccessfully on a tort claim in district court:

> A recital of the operative facts relied upon by a claimant does not state two separate and distinct causes of action merely because such facts may set up a liability both in tort and contract. The terms "conversion" used in the suit in

the District Court and "taking of property without just compensation" in the suit in this court were obviously used by plaintiff for the purpose of attempting to adapt the single claim to the jurisdiction of the different courts in which the claim was being urged, but the use of these terms does not obscure the unity or sameness of the claim. We think it is clear that the word "claim," as used in section 154, supra, has no reference to the legal theory upon which a claimant seeks to enforce his demand if it appears, as it does here, that the defendant in a suit in another court was, in respect of the subject matter or property in respect of which the claim was made, acting mediately or immediately upon the authority of the United States. The terms of section 154 refer to a claim "for or in respect of which" another suit is pending....

89 Ct.Cl. at 440. The import of *British American* is that a suit in tort and contract can be the same claim or cause of action, irrespective of the theory of relief urged, if it arises with respect to the same operative facts, even if the contract claim, because of its value, could not have been maintained in district court.

*National Cored Forgings Co., Inc. v. United States*, 132 Ct.Cl. 11, 19–20, 132 F.Supp. 454, 459 (1955), again construed section 1500 as disallowing a suit when the "same cause of action or claim" is pending in district court. In *Los Angeles Shipbuilding & Drydock Corp. v. United States*, 138 Ct.Cl. 648, 152 F.Supp. 236 (1957), a tax case, the Court of Claims dismissed a claim for an account stated in a different amount than suits covering the same tax years brought in two federal district courts on the theory of overpayment. "The *claim* involved is for the refund of taxes and that claim is before both courts. The theory advanced to sustain the *claim* is quite another matter and not determina-

---

**4.** The facts peculiar to *Martin* regarding the statute of limitations are not present in this case. Here, the alleged breach occurred in 1983. Assuming that plaintiffs diligently pursue their claim in federal district court, this court remains an available forum until 1989, unless the doctrine of collateral estoppel bars relitigation of the same issues underlying plaintiffs' tort claims.

tive of the jurisdiction of this court." 138 Ct.Cl. at 652, 152 F.Supp. at 238 (emphasis in original). Nevertheless, the court remarked:

> The plaintiff could have pursued its claim on the theory of account stated alternatively to its other theories of recovery in the District Court or in the Court of Claims. Either course of action was available to plaintiff. It made its choice of the tribunal desired, the District Court, and therefore cannot now be heard in this court.

*Id.,* 152 F.Supp. at 238. Because *Los Angeles Shipbuilding* was a tax case, no monetary jurisdictional bar would have prevented plaintiff from bringing a two-count complaint in district court in the first place. Under *British American,* however, maintenance of a suit in the Claims Court would not depend on whether the claim or cause of action could be heard in district court.

 The cases interpret section 1500 to require an election between two causes of action both of which are not maintainable in district court or this court if the facts to be proved in the suit filed in this court are the same as pleaded in district court. Accordingly, the court in *A.C. Seeman, Inc.,* 5 Cl.Ct. 386, bit the proverbial bullet by ruling that section 1500 in the context of a pre-award contract claim forces the contractor either to elect the remedy of litigation in this court or to challenge the procurement action in district court. The case at bar does not involve the choice of a remedy. Money is the form of relief sought in both forums. However, the identity of facts is present that compels plaintiffs to choose the stronger theory or cause of action against which they wish the Government to defend and to proceed in the appropriate court. They filed in district court and cannot proceed simultaneously here.

## CONCLUSION

Based on the foregoing, defendant's motion is denied.

IT IS ORDERED, as follows:

The Clerk of the Court will dismiss the complaint for lack of jurisdiction of the subject matter.

No costs.