**JOHNS–MANVILLE CORPORATION et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 465–83C, 688–83C and 1–84C.**

United States Claims Court.

March 10, 1989.

Harvey G. Sherzer, Washington, D.C., for plaintiffs. Robert M. Bruskin and Patricia A. Ewing, Howrey & Simon, and Robert D. Batson and Nancy E. Stead, Manville Corp., Denver, Colo., of counsel.

Scott D. Austin, Washington, D.C., with whom were Harold J. Engel, J. Patrick Glynn, and Asst. Atty. Gen. John R. Bolton, for defendant. H. Michael Semler, of counsel.

## OPINION

NETTESHEIM, Judge.

Plaintiffs Johns–Manville Corporation and Johns–Manville Sales Corporation (collectively referred to as "Johns–Manville") filed a Motion for Reconsideration of Order and To Alter Judgment. The motion stems from an order of September 28, 1988, dismissing Johns–Manville's complaints in Nos. 465–83C, 688–83C, & 1–84C for lack of subject matter jurisdiction and awarding costs to defendant. Johns–Manville was ordered to pay defendant, as the prevailing party, all costs incurred in the proceedings before the trial court. The principal issue raised by Johns–Manville's motion is whether the United States Claims Court has the power to award costs to the United States upon a determination in the Government's favor that subject matter jurisdiction is lacking.

## FACTS

The mandate from the United States Court of Appeals for the Federal Circuit issued on September 15, 1988, upon its opinion in *Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed.Cir.1988) (per curiam) (the "*Johns–Manville* jurisdiction decision"). The Federal Circuit affirmed the ruling in *Keene Corp. v. United States*, 12 Cl.Ct. 197 (1987) (the "section 1500 ruling"), that 28 U.S.C. § 1500 (1982), foreclosed jurisdiction of these three cases because Johns–Manville had filed other actions asserting the same claims, some of which are still pending, before instituting its three suits in the Claims Court. On September 15, 1988, the mandate also issued vacating the judgment in *Johns–Manville Corp. v. United States*, 13 Cl.Ct. 72 (1987) (the "*Johns–Manville* merits decision"), *vacated*, 855 F.2d 1571 (Fed.Cir. 1988) (per curiam). Incident to deciding the *Johns–Manville* merits decision for defendant, this court awarded defendant all its costs, other than those of an independent digester and the differential between costs of immediate and daily transcript, which were to be borne equally. 13 Cl.Ct. at 165. On September 16, 1988, following

the Federal Circuit's mandate, the judgment awarding costs upon the *Johns–Manville* merits decision was vacated.

On September 28, 1988, pursuant to RUSCC 54(d),[1] this court directed the Clerk of the Court to dismiss the complaints in Nos. 465–83C, 688–83C, & 1–84C for lack of subject matter jurisdiction and awarded defendant all costs associated with the proceedings before this court. Rule 54(d), like its analogue in the Federal Rules of Civil Procedure, provides as a rule of practice that costs are awardable to the prevailing party, unless the trial court otherwise directs. The award of costs was explained in the September 28, 1988 order:

> Since the judgment entered on August 6, 1987, has been vacated, the award of costs to defendant pursuant to that order is no longer effective. However, as defendant is the prevailing party in this matter, defendant will have its costs incurred before this court. RUSCC 54(d) allows as a matter of course all costs to the prevailing party unless the court, in its discretion, deems that the circumstances warrant sharing in whole or in part. Such circumstances are not present. Accordingly, further to ¶ 1 of the order entered on January 28, 1987, and the order entered on March 27, 1987, the court deems that it is reasonable and equitable that the costs of ENDISPUTE [the independent digester] fully be taxed to plaintiffs.

Johns–Manville has called into question the validity of this rationale. In order to clarify the justification for awarding costs to defendant, it is necessary to recite some of the events which transpired when these three cases were before this court.

The cases were transferred from Judge Thomas J. Lydon on July 16, 1986. Since April 21, 1986, a six-week trial in No. 465–83C had been scheduled to commence on March 16, 1987. On January 16, 1987, the parties agreed to a revised schedule for the matters to be briefed and argued before trial, and the trial date was reset to April 20, 1987. *See* Order entered Jan. 16, 1987. On January 20, 1987, the court *sua sponte* raised the question whether 28 U.S.C. § 1500 was applicable to all three of Johns–Manville's cases. Simultaneous briefs were called for by an order entered on February 13, 1987. Defendant moved on February 27, 1987, to dismiss Johns–Manville's claims for lack of jurisdiction over the subject matter. Johns–Manville also submitted its brief on February 27, 1987. After argument an order issued on April 6, 1987, dismissing Johns–Manville's three actions for lack of subject matter jurisdiction. *Keene Corp.*, 12 Cl.Ct. at 216. Recognizing the importance of this jurisdictional issue and its impact on the impending trial, the court did not enter a judgment of dismissal, but certified the issue pursuant to 28 U.S.C. § 1292(d)(2) (1982), stating:[2]

> An immediate appeal from this order materially will advance the ultimate termination of the asbestos litigation if the appellate court affirms the court's order and plaintiffs in other asbestos cases elect to dismiss their Claims Court litigation. . . .

12 Cl.Ct. at 216.

On March 27, 1987, Johns–Manville had moved for a six-week extension of the trial date to June 1, 1987, or a three-month extension to July 15, 1987. Defendant opposed, and a separate order entered on April 6, 1987, *inter alia*, reciting the histo-

---

1. RUSCC 54(d) provides in full:

   Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States shall be imposed only to the extent permitted by law.
   (Citation omitted.)

2. 28 U.S.C. § 1292(d)(2) provides in full:

   When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to the court within ten days after entry of such order.

ry of the parties' agreed-to scheduling orders and summarizing the reasons prompting Johns–Manville's request. In recognition of the parties' efforts during trial preparation to brief the section 1500 issue, trial was postponed until May 4, 1987. While asking the Federal Circuit for permission to appeal the section 1500 ruling of April 6, Johns–Manville also petitioned the appeals court for a stay of the briefing schedule, thereby negating the purposes for which the ruling was certified—to prevent unnecessary litigation on the merits of the case if the order were upheld and to avoid disruption of the trial if it were overturned. According to the order issued as *Johns–Manville Corp. v. United States,* Misc. Doc. Nos. 160 & 161 at 3 (Fed.Cir. May 5, 1987), Johns–Manville, over defendant's objection, had requested that

> the briefing schedule here be stayed for approximately six weeks, or until after the completion of the trial scheduled to commence May 4, 1987 in the Claims Court. Manville argues that if briefing is not stayed, Manville will be required simultaneously to try the Claims Court case and to brief the important jurisdictional questions here.

*Id.* at 3 (footnote omitted).

The certified issue was accepted, but the Federal Circuit's May 5, 1987 order deferred briefing until 30 days after the record below closed in No. 465–83C. Trial had begun on May 4, 1987, and culminated in a judgment for defendant entered on August 6, 1987, following the *Johns–Manville* merits decision of that date. At some later date, briefing before the Federal Circuit on the section 1500 ruling became consolidated with briefing on Johns–Manville's appeal of the *Johns–Manville* merits decision. The Federal Circuit heard the appeals of both the section 1500 ruling and the *Johns–Manville* merits decision at the same time. By affirming the section 1500 ruling, the Federal Circuit held that consideration of the *Johns–Manville* merits decision was pretermitted. 855 F.2d 1571.

On October 17, 1988, Johns–Manville moved for reconsideration of this court's September 28, 1988 cost award. Briefing, including supplemental briefs pursuant to an order entered on November 8, 1988, was completed by December 12, 1988. Thereafter, proceedings were stayed by order of December 13, 1988, since it appeared that Johns–Manville was considering whether to lodge a petition for writ of *certiorari* with the United States Supreme Court in connection with the *Johns–Manville* jurisdiction decision. Johns–Manville having filed its petition, proceedings on defendant's bill of costs were stayed on January 3, 1989, pending action by the Supreme Court. The Supreme Court has denied the petition. *Johns–Manville Corp. v. United States,* — U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Johns–Manville's motion is now before the court for decision.

Johns–Manville contends that this court's award of costs is "an abuse of discretion and highly inequitable." Johns–Manville's Br. filed Oct. 17, 1988, at 10. Johns–Manville grounds its contention on the fact that the court raised the section 1500 issue *sua sponte* three months prior to the then-scheduled trial date, that Johns–Manville successfully lodged an interlocutory appeal with the Federal Circuit, and that the trial court rejected Johns–Manville's request for a delay in the trial date "to permit review by the Federal Circuit." *Id.* at 11.

### DISCUSSION

#### 1. *Jurisdiction to award costs*

Johns–Manville takes the position that the Claims Court lacks jurisdiction to award costs in favor of the United States if jurisdiction of the subject matter on the merits does not exist. Congress has empowered the Claims Court to award costs against the Government. 28 U.S.C. § 2412(a) (1982), provides in full:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction

of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

Section 2412(d)(2)(F) (Supp. IV 1986), provides that " 'court' includes the United States Claims Court." *See also* 26 U.S.C. § 7430(a)(2) (1982 & Supp. IV 1986) (Claims Court can award costs against United States in tax refund suits).

28 U.S.C. § 2412 (1976), was enacted originally apart from the Equal Access to Justice Act, 28 U.S.C. §§ 2412(a)-(f) (1982 & Supp. IV 1986). Original section 2412 codified the common law rule that a sovereign is not liable for costs absent specific statutory provision therefor and allowed cost awards to be made against the United States at the discretion of the trial court. However, the Federal Circuit in *Ellis v. United States*, 711 F.2d 1571, 1574–75 (Fed.Cir.1983), and in *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 251–52 (Fed.Cir.1985), ruled, before 28 U.S.C. § 2412(a) was amended to designate the Claims Court as a court empowered to enter cost awards against the United States, that the Claims Court had jurisdiction to award costs to the extent that it had jurisdiction over the underlying action.

■ This court is of the view that 28 U.S.C. § 2412 (1964), was amended in 1966 to allow both the district courts and the United States Court of Claims [3] to award costs against the United States in the same manner as they could be awarded against private parties. Act of July 18, 1966, Pub. L. No. 89–507, 1966 U.S.Code Cong. & Admin.News (80 Stat. 308) 349. The result was accomplished not by adding the Court of Claims to section 2412, but by repealing former 28 U.S.C. § 2520(d), which had limited cost awards in the Court of Claims.

S.Rep. No. 1329, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 2527, 2530, stated:

This section repeals section 2520(d) of title 28 of the United States Code. Section 2520(d) presently provides for the taxing of the cost of printing the record against the losing party in cases in the Court of Claims "except when judgment is against the United States." This language is of course unnecessary with the addition of the uniform authorization for the taxing of costs provided by this bill. Further, the exception concerning the United States is rendered obsolete by this bill which eliminates this sort of inequality.

Johns–Manville argues that section 2412(a) is inapplicable since costs were awarded not against the Government, but in favor of the Government as the prevailing party. Specifically, Johns–Manville contends that because the Claims Court (or its predecessor the Court of Claims) was not included in a statute that allows certain federal trial courts to enter cost awards upon dismissal for lack of jurisdiction, the Claims Court does not have jurisdiction to enter such awards.

28 U.S.C. § 1919 (1982), provides:

Whenever any action or suit is dismissed in any district court or the Court of International Trade for want of jurisdiction, such court may order the payment of just costs.

On this basis Johns–Manville argues that, unlike the federal district courts and the Court of International Trade, the Claims Court lacks independent authority to award costs upon a dismissal for lack of jurisdiction. When 28 U.S.C. § 1919 was amended in 1980 to include the Court of International Trade, the Court of Claims was not added. Nor was section 1919 amended in 1982 or thereafter to include the Claims Court as the successor to the Court of

---

3. According to the Federal Circuit, the Claims Court was "formed to continue a function previously part of an Article III court" (the Court of Claims). *Lariscey v. United States,* 861 F.2d 1267, 1271 (Fed.Cir.1988). That "function" was to adjudicate to final judgment all the claims within the jurisdiction of the former Court of

Claims, except for review of certain decisions emanating from administrative boards of contract appeals. Moreover, the Claims Court's jurisdiction was increased to include pre-award challenges to awards of government contracts, with the federal district courts retaining complementary jurisdiction of post-award protests.

Claims. Therefore, Johns–Manville invokes the common law rule prohibiting a court that lacks subject matter jurisdiction from awarding costs. *See Mansfield, C. & L.M. Ry. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

Defendant contends that the absence of the Court of Claims, and thereafter the Claims Court, from 28 U.S.C. § 1919 is an anomaly attributable to the announced practice of the former Court of Claims not to award costs. *E.g., Rawlins v. United States,* 231 Ct.Cl. 313, 331, 686 F.2d 903, 914 (1982); *Aparacor, Inc. v. United States,* 215 Ct.Cl. 596, 607, 571 F.2d 552, 558 (1978). Defendant's explanation is sound, for to read 28 U.S.C. § 1919 as omitting the Court of Claims by intention would restrict such cost awards in the Government's favor in the one court wherein they would most commonly arise. When a plaintiff insists that jurisdiction is present and the Government must engage in substantial effort to oppose this position, the Government is entitled to recover its costs if it prevails. The Claims Court frequently must try a case to ascertain, for example, if an implied-in-fact contract exists upon which to predicate its jurisdiction to hear a breach claim. Substantial taxable costs are thereby incurred. Congress cannot be presumed by oversight to have considered the Court of Claims and the Claims Court as outside the parameters of 28 U.S.C. § 1919.

Defendant maintains that it is accepted practice to award costs to a prevailing party, even if jurisdiction no longer exists, citing *Premachandra v. Mitts,* 727 F.2d 717, 720 (8th Cir.1984), *rev'd on other grounds,* 753 F.2d 635 (8th Cir.1985) (en banc). In *Premachandra* the lower court's jurisdiction became moot after defendant acceded to plaintiff's requested relief and settled the case. The Eighth Circuit determined that although the lower court was deprived of jurisdiction by this event, the court could still award costs. The present situation is distinguishable on its facts, but the rationale of *Premachandra* is wholly applicable.

As a matter of judicial administration, a court must be able to retain jurisdiction if only to determine that the court has jurisdiction. *See generally United States v. United Mine Workers,* 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947) (court has jurisdiction over a matter until question of jurisdiction finally resolved); *cf. Orange Prod. Credit Ass'n v. Frontline Ventures Limited,* 792 F.2d 797 (9th Cir.1986) (court may award fees and costs under Fed.R.Civ.P. 11 when it lacks subject matter jurisdiction). Defendant is correct that it is not always apparent from the face of the pleadings whether a court can hear a matter.

■ The Claims Court has jurisdiction to award costs against the Government based upon 28 U.S.C. § 2412(a), which is a vital adjunct to the court in discharging its duties. Johns–Manville's argument would lead to the incongruous result that if the court found itself to have jurisdiction over the subject matter, a plaintiff would be entitled to recover its costs in perfecting its position that jurisdiction was present, but if the opposite conclusion were reached, as it was in these cases, the Government could not recover its costs. This result would be wholly inequitable.[4] Congress cannot be presumed to have enacted section 2412(a), (d)(2)(F) to allow the Claims Court to tax awards against the United States in any action by any plaintiff, *cf.* 28 U.S.C. § 2412(d)(1)(A) (awards of attorneys' fees and expenses only available to particular plaintiffs), if at the same time the Claims Court had no power to tax costs against a plaintiff, notwithstanding 28 U.S.C. § 1919. Given that the statutory authority to enter cost awards against the sovereign displaces the common law, Congress cannot be presumed to have disfavored the Government.

4. Because it is dealing with matters involving a waiver of sovereign immunity, the Claims Court must assure itself in each instance that it has jurisdiction. This can be accomplished as an antecedent to the merits case or in conjunction with resolution of the entire matter. In the case at bar, the court, because of the importance of the jurisdictional question to trial in No. 465–83C, ruled separately on jurisdiction and certified the section 1500 ruling for interlocutory review.

The Supreme Court in *Ex Parte Peterson,* 253 U.S. 300, 316, 40 S.Ct. 543, 548, 64 L.Ed. 919 (1920), stated: "The allowance of costs in the Federal Courts rests not upon express statutory enactment by Congress, but upon usage long continued and confirmed by implication from provisions in many statutes." Nor can Congress be presumed to have legislated asymetrically in favor of a private party against the fisc without some language or other expression of congressional intent pointing to such a result.

### 2. *Authority to award costs for the first time upon mandate*

■ The mandate upon the *Johns–Manville* jurisdiction decision is silent on costs.[5] It provided: "This CAUSE having been heard and considered, it is ORDERED and ADJUDGED: AFFIRMED." Without the Federal Circuit's instruction to award costs incident to dismissing the three complaints, Johns–Manville argues, the court was deprived of jurisdiction once an appeal had been taken on a final decision of a court; moreover, the final decision on appeal prevented the court from reopening the case. *DuBuit v. Harwell Enters., Inc.,* 540 F.2d 690 (4th Cir.1976), is cited as support. In that case a final judgment had entered, an appeal was taken, the mandate issued, and the lower court then awarded attorneys' fees. The Fourth Circuit stated:

> Further jurisdiction of the district court, if any, was dependent upon the terms of the appellate mandate, and when we affirmed the final judgment this put an end to the litigation and the district court had

no authority to reopen the case for the consideration of attorney fees or any other purpose....

540 F.2d at 693 (citation omitted). A case involving an interlocutory appeal of a dispositive issue, however, is not a final judgment. The first opportunity to assess costs comes after the decision on appeal when the trial court enters judgment for the first time.

■ An award of costs does not require a court to reopen a case. An award of costs is simply a ministerial matter performed in conjunction with directing entry of judgment as final disposition.[6] RUSCC 54(d) is a procedural rule of the Claims Court, adopted pursuant to the court's statutory authority to make its own rules. 28 U.S.C. § 2503(b) (1982). The Supreme Court in *Buchanan v. Stanships, Inc.,* 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988), stated: "Assessment of such costs does not involve reconsideration of any aspect of the decision on the merits. Under [Fed.R.Civ.P.] Rule 54(d), the 'prevailing party' automatically is entitled to costs 'unless the court otherwise directs....' ", 108 S.Ct. at 1131. A postjudgment motion for costs was characterized as seeking "only what was due *because of* the judgment," not a change in the judgment. *Id.* (emphasis in original).

■ Johns–Manville argues that this court lacks authority to issue an order respecting costs absent direction from the appellate court. It contends that the appellate mandate precludes any action other

---

5. Johns–Manville's brief cites the wrong mandate. Johns–Manville quotes the mandate entered upon the *Johns–Manville* merits decision: "This cause having been heard and considered, it is ordered and adjudged: *VACATED.*" Johns–Manville's Br. filed Oct. 17, 1988, at 3; *see also* Johns–Manville's Br. filed Dec. 12, 1988, at 3. However, the court did not look to this mandate in awarding costs, but, rather, to the mandate issued on September 15, 1988, pertaining to the affirmance by the Federal Circuit of this court's section 1500 ruling. Mandate in *Johns–Manville Corp. v. United States,* No. 87–1332 (Fed.Cir. Sept. 15, 1988). Johns–Manville, however, is correct insofar as the award of costs upon the *Johns–Manville* merits decision was rendered a nullity.

6. An award of costs is made by the clerk in conjunction with entry of judgment. RUSCC 58 provides, in pertinent part:

> Subject to the provisions of rule 54(b), (1) upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it....

than dismissal of the case. *Newhouse v. Robert's Ilima Tours, Inc.,* 708 F.2d 436, 441–42 (9th Cir.1983), relied on by Johns–Manville, is inapplicable because it disallowed enlarging the mandate to award prejudgment interest, but the lower court had not awarded costs.

By awarding defendant the costs of the independent digester, Johns–Manville argues that the court was reopening the vacated *Johns–Manville* merits decision, which had directed a judgment awarding those costs to be borne equally. In *Gonzales v. Fairfax–Brewster School, Inc.,* 569 F.2d 1294 (4th Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 320 (1978), the Fourth Circuit addressed costs only to hold that it was improper to change any award of costs once the initial judgment order becomes final. The court stated: "Since the award of such costs had become a finality, the district court had no authority to alter it in any way in carrying out the judgment of the Supreme Court of the United States...." 569 F.2d at 1297.

■ The *Johns–Manville* jurisdiction decision dealt with three cases, Nos. 465–83C, 688–83C & 1–84C. The *Johns–Manville* merits decision dealt with only one of these cases. Before the Federal Circuit issued the *Johns–Manville* jurisdiction decision, this court could not address costs, since judgment had not entered dismissing the three cases. Rather, the section 1500 ruling had been certified for immediate appellate review. If this court previously awarded or declined to award costs in respect of these three cases on the basis of the section 1500 ruling, it would have been improper to revisit the cost award, but the award in these cases was made only in conjunction with the initial entry of judgment and was the first opportunity to address the issue of whether costs should not be awarded upon a judgment dismissing the cases on jurisdictional grounds.

3. *Effect of certification before awarding costs*

■ The perplexing twist to the question of costs is certification. If the trial court had entered judgment on the section 1500 ruling, causing Johns–Manville's cases Nos. 465–83C, 688–83C, & 1–84C to be dismissed for lack of jurisdiction, costs would have been awarded incident to entry of judgment dismissing the three actions. Alternatively, if the trial court had decided the section 1500 issue along with the issues that were tried, instead of resolving it four months before the merits opinion issued, Rule 54(d) would have granted costs to the prevailing party as a matter of course unless the court interceded. A third alternative would be the identification of the jurisdictional issue after trial, but before decision. Rule 54(d) would have awarded costs to the prevailing party. In all three scenarios, the court does not pass on the award of costs until judgment enters on the jurisdictional decision. In the latter two, the cost award can include costs incurred by the trial. If the court were to agree with Johns–Manville's logic, it would be required when certifying a dispositive issue to suggest an award of costs or be forever barred. Since a final judgment does not enter until a dispositive certified issue is decided and the trial court is directed to enter judgment by the appellate mandate, it would be presumptuous to address costs as part of an order certifying a question for immediate review. The more circumspect procedure to follow, and the course that was taken in the present case, was to assess costs at the time judgment was first entered on the section 1500 ruling.

4. *Obtaining dismissal based on jurisdiction as establishing a prevailing party*

■ Johns–Manville asserts that RUSCC 54(d) only allows the court to award costs when there is a prevailing party. When a case is dismissed for lack of subject matter jurisdiction, Johns–Manville claims, no party prevails and, therefore, no costs can be assigned. *Richardson v. Wiley,* 569 F.2d 140, 143 (D.C.Cir. 1977), overturned an award of attorneys' fees, not costs, because the court lacked jurisdiction and there was no prevailing party. The proposition urged by Johns–Manville, in any event, is contrary to a

substantial line of cases in the Claims Court, all expressly awarding costs to the Government as the prevailing party upon a dismissal for lack of subject matter jurisdiction. *Benally v. United States,* 14 Cl.Ct. 8, 11 (1987) (award of costs after dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1500); *see also Raymark Indus., Inc. v. United States,* 15 Cl.Ct. 334, 345 (1988); *LaChance v. United States,* 15 Cl.Ct. 127, 131 (1988); *Frawley v. United States,* 14 Cl.Ct. 766, 770 (1988); *Hanson v. United States,* 13 Cl.Ct. 519, 535 (1987), *aff'd mem.,* 861 F.2d 728 (Fed. Cir.1988); *Erikson v. United States,* 12 Cl.Ct. 754, 759 (1987); *Conant v. United States,* 12 Cl.Ct. 689, 693 (1987); *Martinez v. United States,* 11 Cl.Ct. 830, 832 (1987); *Thaxton v. United States,* 11 Cl.Ct. 181, 183 (1986); *Rehling v. United States,* 11 Cl.Ct. 85, 86 (1986), *recon. denied,* 11 Cl.Ct. 334, *aff'd mem.,* 831 F.2d 305 (Fed.Cir. 1987).

■ A party in whose favor judgment is rendered is generally the prevailing party for purposes of Fed.R.Civ.P. 54(d), identical to RUSCC 54(d). C. Wright & A. Miller, *Federal Practice & Procedure* § 2667, at 129 (1973); 6 *Moore's Federal Practice* ¶ 54.70[4], at 1306–07 (2d ed.1976); *see St. Paul Fire & Marine Ins. Co. v. United States,* 4 Cl.Ct. 762, 767 (1984) (whether or not dismissal of action is on merits generally means defendant is prevailing party). *Hydaburg Cooperative Ass'n v. United States,* 229 Ct.Cl. 250, 254, 667 F.2d 64, 66 (1981), *cert. denied,* 459 U.S. 905, 103 S.Ct. 207, 74 L.Ed.2d 166 (1982), stands for the proposition that a merits ruling is rendered a nullity by a subsequent decision that subject matter jurisdiction is lacking, but does not hold that there is no prevailing party.

5. *Abuse of discretion*

■ Johns–Manville argues that the court abused its discretion in holding trial after ruling that it lacked jurisdiction. In so arguing, Johns–Manville overlooks that, when the section 1500 issue was brought to the parties' attention, Johns–Manville urged the court to proceed with trial over defendant's opposition that the cases should be dismissed. Moreover, in its reconsideration motion, Johns–Manville suggests that it asked this court to postpone trial so that Johns–Manville could seek review of the April 6, 1987 *Johns–Manville* jurisdiction decision. It is true that Johns–Manville requested a postponement, but not for the purpose of appellate review.

Argument on the section 1500 issue was held on March 18, 1987. During argument defendant suggested that it would be improper for the court to go forward with trial, Transcript of Proceedings, No. 465–83C, Mar. 18, 1987, at 38 [hereinafter "Tr."], but Johns–Manville represented that regardless of the outcome of the section 1500 issue it preferred that trial go forward. Johns–Manville had the opportunity to express its views during argument:

The Court: Mr. Sherzer, do I have one point straight that no matter what happens, you would like to go forward? In other words, I am proceeding on the assumption that whatever order I enter you want trial to begin.

Mr. Sherzer: Yes, Your Honor, That is absolutely accurate....

*Id.* at 40–41. At no time during argument on section 1500 did Johns–Manville suggest that it was improper or imprudent to go forward with trial.

On March 19, 1987, Johns–Manville requested a status conference. At that time Johns–Manville did not represent that it was not prepared to proceed to trial. On March 27, 1987, Johns–Manville requested a six-week or three-month extension to prepare for trial. Johns–Manville's Scheduling Memorandum, filed Mar. 27, 1987, at 3. A review of this memorandum and the transcript of proceedings of March 30, 1987, does not reveal that Johns–Manville's request for delay of trial was motivated by a desire to have the Federal Circuit review the section 1500 ruling. Rather, Johns–Manville articulated problems concerning time pressures and the burden placed on it in having been required to defend against defendant's section 1500 motion. Johns–Manville's scheduling memorandum represented:

The six week extension suggested by Manville to the Government is required by a series of unforeseen failures of the Government to live up to its litigation obligations. These Government obligations, and its failure to meet them, are described below. It also is required as a result of the unanticipated diversion of Manville's counsel's time and attention to the 28 U.S.C. § 1500 issue—an important issue raised *sua sponte* by the Court in January and still pending.

*Id.* at 7. Johns–Manville listed six instances of delay attributed to defendant, concluding:

With these delays by the Government, and given all of the tasks which must be accomplished to bring the case to trial, Manville had to reluctantly conclude that the April 10 Manville rebuttal submission date and the April 20 trial date simply are not practicable.

*Id.* at 12.

The only mention of appellate consideration of the section 1500 ruling in connection with the trial date was Johns–Manville's anticipated problems in seeking review while preparing for trial below. *Id.* Johns–Manville did not represent that it did not want to proceed to trial until a decision on the section 1500 issue was reached by the Federal Circuit. In fact, at the status conference held on March 30, 1987, counsel for Johns–Manville stated:

But they—as a practical matter we have to deal with that reality. So on the 18th when Your Honor discussed the situation on 28 USC 1500, between then and now our position is exactly the same. We still want to go to trial. We have been pushing for trial and we were working and are working and have not stopped at any time working toward the April 20 date.

Tr., Mar. 30, 1987, at 13.

Mr. Sherzer: Frankly, had there been no firm trial date, which I think are an important feature in managing complex litigation anyway, I don't think we would have gotten to the point where we are now. We are very, very close. Let there be no doubt about that. We are not standing up here saying that we are [off] the track or not ready. We are very close to trial. We want to go ahead regardless of how the Court rules, although I have to put a caveat on that to the extent that, and I am sure the Court can understand, when we are dealing with a procedural issue, a jurisdictional issue, we don't have Your Honor's decision, and we don't know what the government is going to do except that the government has threatened a mandamus petition.

*Id.* at 20. Johns–Manville did not argue that trial should not proceed if the decision on section 1500 was not in its favor. Johns–Manville's principal concern was that its preparation for trial would be for naught if defendant sought a writ of mandamus to prevent the court from proceeding with trial. This problem was solved when defendant represented that it would not choose that course, but was prepared to proceed to trial. *See* Letter to court from Harold J. Engel, Apr. 1, 1987.

On April 3, 1987, Johns–Manville filed a Scheduling Status Report seeking a 60–day extension in the trial date to June 22, 1987. Johns–Manville again did not discuss postponing the trial to accommodate appellate review. Rather, the requirements of simultaneously preparing for trial and briefing the appeal were urged to justify the extension. On April 6, 1987, a lengthy order entered detailing the history of scheduling; discussing the merits of the parties' positions; finding that Johns–Manville had not demonstrated cause for the postponement and that defendant would be disadvantaged thereby; and allowing a two-week extension to May 4, 1987, in view of the time spent on the 1500 issue before this court. When the decision on section 1500 issued on April 6, 1987, Johns–Manville did not ask for a stay pending appeal. Trial began on May 4, 1987. The Federal Circuit stayed the briefing schedule on the certified issue on May 5, 1987, at Johns–Manville's request.

Before this case was reassigned to this court in July 1986, both parties had agreed to a schedule that this court has described

as "punishing." *See* Order entered Apr. 6, 1987, at 3. However, the schedule was exacting for everyone. Defendant was dilatory in not raising the section 1500 issue earlier. Once raised, however, defendant acted responsibly to bring it to a prompt resolution while proceeding toward trial, thereby occasioning minimal disruption of the schedule and expenditure of the parties' resources if the section 1500 ruling were upheld or overturned. Trial proceeded as scheduled because defendant opposed any further delay and because Johns–Manville failed to overcome defendant's opposition.

Johns–Manville now argues that prudence should have led to postponement of the trial date until the certified issue was resolved. The alternative to proceeding to trial was to remove Johns–Manville's six-week trial from the top of the court's trial calendar. *See* Order entered on Apr. 6, 1987. Johns–Manville was indecisive as to the date on which trial should begin. Defendant was not. Defendant was proved correct in terms of perpetuating the record of trial. As noted in the *Johns–Manville* merits decision, some of the older witnesses had impaired faculties as of the time of trial. Moreover, some witnesses scheduled to testify were excused for medical reasons.

The determination not to award costs lies within the trial court's discretion. But for Johns–Manville's decision not to expedite, and indeed to halt, consideration of the certified issue, the trial could have stopped, if the Federal Circuit agreed with the section 1500 ruling, or progressed to its scheduled completion, if the Federal Circuit had disagreed. Defendant is entitled to its costs entailed in obtaining the section 1500 ruling, which, due to no action on defendant's part, became effective only after trial.

Johns–Manville contends that "it was a clear abuse of discretion for the court to *change* its original award of costs in which it taxed the parties *equally* with the cost of the digester, to *full* taxation of the cost of the digester to Manville...." Johns–Manville's Br. filed Oct. 17, 1988, at 11 (emphasis in original). Further: "The appearance created by this court's post-appeal Order is that this court is penalizing Manville for having exercised its right of appeal to the Federal Circuit." *Id.* The trial court insisted that Johns–Manville seek appellate review by conditioning suspension of a judgment dismissing these three cases on prompt appellate review. Because of the Federal Circuit's order vacating the *Johns–Manville* merits decision in No. 465–83C, this court for the first time by its September 28, 1988 order considered an award of costs associated with the Government's defending against all three actions and prevailing on jurisdiction in all three.

Whatever considerations led this court to assess costs equally after trial are irrelevant to considering whether to displace the presumption that costs are awarded to the prevailing party in respect of the three cases dismissed on jurisdictional grounds. Having prevailed on its section 1500 motion, defendant was entitled to all costs necessarily related to defense of these three actions. The award of costs of the digester and associated transcript costs is not a penalty, but a recognition of defendant's entitlement, taking into consideration the Rule 54(d) presumption in favor of awarding costs, coupled with Johns–Manville's failure to make a showing that it would be inequitable to let the award stand.

## CONCLUSION

Based on the foregoing, Johns–Manville's motion for reconsideration is denied. The Clerk of the Court shall proceed to consider defendant's bill of costs.

IT IS SO ORDERED.